MAY - 3 2018

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 2:18cr 69 |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | Conspiracy to Commit Wire Fraud |
| | ) | (Count One) |
| COURTNEY DETRON CLOMAN | ) | |
| | ) | 18 U.S.C. §§ 981(a)(1)(C) & |
| | ) | 28 U.S.C. § 2461 |
| Defendant. | ) | Criminal Forfeiture |
| | ) | |

**CRIMINAL INFORMATION**

THE UNITED STATES ATTORNEY CHARGES THAT:

**INTRODUCTORY ALLEGATIONS**

1. L&K Technology and Logistics (L&K) was a Virginia-based Limited Liability Company (LLC) based in Chesapeake, Virginia. L&K was established on or about June 3, 2014, purportedly to provide tactical equipment, inert explosive training aids, and other equipment to the United States Navy (USN).

2. Wayne Tech and Inert (Wayne Tech) is a Florida-based profit-company established in September, 2015 purportedly to provide tactical equipment and inert training aids to the USN.

3. Conspirator 1 is an officer in the USN and was the Supply Officer for a USN command based out of Virginia Beach, Virginia. As the Supply Officer, Conspirator 1 had authority purchase materials for his unit. Conspirator 1 did not have authority to engage in acts affecting a personal financial interest.

4. Conspirator 2 is the owner of L&K. He filed to open the business and its bank account with BB&T Bank in 2014. L&K's sole place of business and principal office was Conspirator 2's home in Chesapeake, Virginia.

5. COURTNEY DETRON CLOMAN (hereinafter, "CLOMAN") is a naval flight officer in the USN. CLOMAN, though not an official employee of L&K, received payment from Conspirator 2 for his assistance with the operation of L&K.

6. CLOMAN registered Wayne Tech while he was a USN flight student in Pensacola, Florida at the suggestion of Conspirator 1.

7. Contracting Firm V (Firm V) is located in San Diego, California. Firm V is a veteran owned, professional service firm that provides logistical support services to industry and government agencies.

8. Contracting Firm F (Firm F) is located in Virginia Beach, Virginia. Firm F provides tactical gear, uniforms, and security equipment to the USN and other government agencies.

9. John Doe is a sales representative at Firm F known personally to Conspirator 1.

10. At the time relevant to this Criminal Information, the Department of Defense (DOD) and DLA used a goods-purchasing system known as Electronic Mall (E-Mall). E-Mall was an internet based ordering platform meant to provide a full service e-commerce site to find and acquire finished goods and services from the commercial marketplace. E-Mall was a major mechanism through which the USN purchased goods from prime vendors.

11. For purposes of this Criminal Information, Firm V did business exclusively as a military equipment vendor through E-Mall.

12. Two sales representatives personally known to Conspirator 1 regularly conducted E-Mall sales to the USN through "Money Value Only" (MVO) sales orders. The purpose of a MVO sales order is to create a credit balance on Firm V's books.

13. With a MVO, a military command would place a sales order request with Firm V for products available in Firm V's E-Mall "catalog." However, Firm V would then take the funds released for that sales order, and use them to purchase substitute products *not* available through E-Mall. In this way, Firm V could provide a military unit with virtually any product needed, under the guise of a purchase for products in Firm V's approved catalog. This process is also known as "product substitution."

14. L&K conducted business exclusively with Firm V, as a subcontractor.

15. Wayne Tech conducted business exclusively with Firm F, as a subcontractor.

16. Neither L&K, nor Wayne Tech held inventory, nor had any capability to fulfill government procurement contracts.

17. Neither L&K, nor Wayne Tech delivered any product to the United States Navy.

18. Neither L&K, nor Wayne Tech had any business expenses whatsoever, and thus each firm operated at one hundred percent profit.

**COUNT ONE**

1. The allegations contained in the "Introductory Allegations" section of this Criminal Information are re-alleged and incorporated by reference as if fully set forth herein.

**THE CONSPIRACY**

2. From on or about May 2014, and continuing until in or around December of 2015, in the Eastern District of Virginia and elsewhere, CLOMAN, Conspirator 1, and Conspirator 2, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other, to commit an offense against the United States, to wit: wire fraud, to devise and intend to devise any scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises and to transmit, or cause to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, any writings, signs, signals and sounds, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

**THE PURPOSE OF THE CONSPIRACY**

3. The purpose of the conspiracy was for CLOMAN, Conspirator 1, and Conspirator 2 to circumvent the proper military procurement process, and to personally profit by steering USN procurement contracts for inert training devices to sham companies, owned and operated by the conspirators themselves.

**WAYS MANNER AND MEANS OF THE CONSPIRACY**

The ways, manner and means by which the conspiracy was carried out included, but were not limited to, the following:

4. It was part of the conspiracy for CLOMAN and Conspirator 2 to open L&K at the suggestion of Conspirator 1.

5. It was part of the conspiracy for CLOMAN to open Wayne Tech at the suggestion of Conspirator 1.

6. It was part of the conspiracy for L&K and Wayne Tech to purport to be vendors of "inert explosive training aids" for USN use.

7. All conspirators understood that CLOMAN would participate in the conspiracy by reviewing and sending invoices, packing slips, and other documentation on behalf of L&K and Wayne Tech, over email.

8. It was part of the conspiracy that CLOMAN would conduct business for L&K under the alias "David Freese" or "Dave Freese" at the suggestion of Conspirator 1.

9. It was part of the conspiracy that Conspirator 1 would facilitate business for L&K and Wayne Tech by ensuring that his unit would grant procurement contracts to both companies, using a legitimate vendor (Firm V or Firm F) as an intermediary.

10. It was part of the conspiracy for Conspirator 1 to sign and date packing slips on behalf of his USN unit indicating that L&K or Wayne Tech had delivered products to the USN when in fact they had not.

11. All conspirators understood that they would divide the proceeds of L&K in percentages of forty percent to Conspirator 1, fifteen percent to Conspirator 2, and fifteen percent to CLOMAN. Thirty percent of L&K's proceeds would be reserved for tax purposes.

12. It was part of the conspiracy that CLOMAN, Conspirator 1, and Conspirator 2 would transmit, and cause others to transmit, by means of wire communication in interstate commerce, writings, and signals, specifically, emails, for the purpose of defrauding the USN.

**OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY**

13. In or around May 2014, Conspirator 1 informed Conspirator 2 that Conspirator 1 could direct Government contracts to businesses of his choosing.

14. Conspirator 1 then directed Conspirator 2 to establish an LLC to which Conspirator 1 would then offer government contracts.

15. Conspirator 2 sought the assistance of CLOMAN to start the business as CLOMAN had previously operated an LLC.

16. CLOMAN and Conspirator 2 went to an attorney's office and established L&K on June 3, 2014, with Conspirator 2 being the owner and L&K having a business address at Conspirator 2's home located in Chesapeake, Virginia.

17. On June 24, 2014, Conspirator 2 established an L&K bank account at BB&T.

18. On or about June 18, July 9, December 10, and December 15, 2014, Conspirator 1 created fraudulent purchase requests for L&K-specific inert training devices for his unit.

19. For each purchase request, Conspirator 1 collaborated with CLOMAN to create sales orders (i.e., sales quotes associated with each purchase request) for L&K inert training aids.

20. Conspirator 1 received these sales orders from CLOMAN, doing business as "David Freese" over email, and forwarded them via email to Firm V.

21. On July 8, 2014, CLOMAN, acting as Freese, emailed an invoice to a Firm V sales representative associated with a June 18, 2014 sales order. The same day, the sales representative directed Firm V to "pay this vendor."

22. On July 16, 2014, CLOMAN, acting as Freese, sent an email to Conspirator 1 stating, "this email confirms that we have shipped your order." Conspirator 1 then sent an L&K invoice and signed packing slip to Firm V instructing them to "process to close out."

23. On July 17, 2014, Conspirator 2 deposited a check he received in the mail from Firm V, dated July 9, 2014, in the amount $21,000.00, into the L&K business bank account at BB&T.

24. On August 19, 2014, Conspirator 2 deposited another check he received in the mail from Firm V dated August 14, 2014, for $83,394.00, into the L&K business bank account at BB&T.

25. On December 8, 2014, Conspirator 1 sent Firm V an L&K sales order for $93,911.00-worth of inert explosive training aids. Conspirator 1 carbon-copied "Dave Freese" to this email.

26. On December 9, 2014, a sales representative from Firm V sent CLOMAN an email requesting that he provide Firm V with a quote for various L&K items totaling $31,000.00.

27. On December 9, 2014, CLOMAN, acting as Freese, responded to the sales representative, telling Firm V that he would "coordinate with [Conspirator 1] which items he would like to quote with the limited funds."

28. On December 10, 2014, CLOMAN, acting as Freese, sent Firm V an L&K sales order for various inert explosive training aids worth $30,300.00 in total.

29. On December 10, 2014, Firm V sent CLOMAN an email explaining that they would "get [him] a [purchase order] out ASAP."

30. On December 15, 2014, CLOMAN, acting as Freese, emailed Firm V another sales order for various inert explosive training aids, this time totaling $55,692.00. The email also included packing slips associated with the sales order.

31. On January 1, 2015, CLOMAN, acting as Freese, sent Firm V an email containing invoices for the sales orders dated December 10, and December 15, 2014.

32. CLOMAN indicated in the email that Conspirator 1 had signed and sent packing slips to Firm V, confirming receipt of the items ordered.

33. On January 22, 2015, Conspirator 2 deposited a check that he received from Firm V, dated January 14, 2015, and worth $55,692.00, into the L&K business bank account at BB&T.

34. On February 23, 2015, Conspirator 2 deposited a check he received from Firm V, dated February 5, 2015, and worth $30,300.00, into the L&K business bank account at BB&T.

35. Emails sent by CLOMAN, as "Dave Freese", and using an L&K Gmail account, were transmitted from L&K headquarters (Conspirator 2's home) in Chesapeake, Virginia, in the Eastern District of Virginia.

36. For four total fraudulent sales of inert explosive training devices from L&K to the USN, L&K received approximately $190,386.00 in USN funds.

37. As a result, and for his part in the L&K component of the conspiracy, CLOMAN personally obtained approximately $28,557.90 in fraud proceeds.

38. On or about September 2015, Conspirator 1 advised CLOMAN that he could award Wayne Tech similar government contracts, on which Wayne Tech would not have to bid to win.

39. Conspirator 1 advised CLOMAN that John Doe could subcontract USN contracts exclusively to Wayne Tech.

40. In September 2015, Conspirator 1 instructed CLOMAN to create a Wayne Tech sales quote, invoice, and packing slip for various inert explosive training aids for the USN.

41. CLOMAN filled out these documents as instructed by Conspirator 1, representing a sale of $90,195.50 in Wayne Tech products to the USN, using Firm F as an intermediary.

42. On October 8, 2015, CLOMAN generated a Wayne Tech packing slip indicating delivery of the Wayne Tech training aids to the USN. He emailed this document from Pensacola, Florida, to Conspirator 1 in Virginia Beach, Virginia.

43. On October 14, 2015, Conspirator 1 signed the packing slip, fraudulently certifying delivery of the Wayne Tech products.

44. Conspirator 1 submitted the signed packing slip to Firm F, triggering payment from Firm F to Wayne Tech.

45. On December 10, 2015, CLOMAN received a wire-transfer of $90,195.50 into a Wayne Tech business checking account at Navy Federal Credit Union (NFCU) in Pensacola, Florida from Firm F's business checking account in Virginia.

46. Conspirator 1 then instructed CLOMAN to retain $25,000.00 of the wire transfer proceeds to pay-off a debt owed to CLOMAN by Conspirator 1.

47. On December 11, 2015, CLOMAN transferred $60,000.00 from the Wayne Tech business account, to his personal checking account. CLOMAN then obtained two NFCU cashier's checks for $22,000.00 each and sent both to Conspirator 1 in Virginia Beach, Virginia via certified mail.

48. On December 17, 2015, Conspirator 1 deposited one of the cashier's checks into his personal bank account at NFCU.

49. On December 18, 2015, John Doe deposited the other cashier's check into his personal bank account at BB&T Bank.

(In violation of Title 18, United States Code, Section 371).

**FORFEITURE**

1. The defendant, if convicted of the violation alleged in count one of this information, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

2. If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

3. The assets subject to forfeiture include, but are not limited to:

a. A monetary judgment in the amount of not less than $44,557.90, representing the proceeds of count one obtained by CLOMAN.

(In accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).)

Respectfully submitted,

Tracy Doherty-McCormick
Acting United States Attorney

By: ______________________________

David Layne
Special Assistant United State Attorney
Colorado Bar No. 47989
U.S. Attorney's Office
101 W. Main Street, Ste. 8000
Norfolk, Virginia 23510
Office Number – 757-441-6331
David.Layne@usdoj.gov